# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
FEB 10 2020
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
    Apple Iphone )   Case No.    **20MJ0697**
    IMEI: 35-726009-246190-3 )
    MEID: 35726009246190 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
    See Attachement A

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:
    See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
    ☑ evidence of a crime;
    ☐ contraband, fruits of crime, or other items illegally possessed;
    ☐ property designed for use, intended for use, or used in committing a crime;
    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952, 960 | Unlawful Importation of a controlled substance |

The application is based on these facts:
    See attached Affidavit.

    ☑ Continued on the attached sheet.
    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

                                      *Applicant's signature*

                          Special Agent Robert C. Torrence, HSI
                                      *Printed name and title*

Sworn to before me and signed in my presence.

Date:    2/13/20

                                      *Judge's signature*

City and state:   San Diego, Ca             Hon. JILL L. BURKHARDT, U.S. Magistrate Juge
                                                           *Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Robert C. Torrence, Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) being duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by HSI Special Agents for the following:

> Apple Iphone
> IMEI: 35-726009-246190-3
> MEID: 35726009246190
> (Hereinafter "**Target Device**")

2. The **Target Device** was seized on December 29, 2019, from Christopher WEST at the San Ysidro Port of Entry (POE), San Diego, California when he entered the United States from Mexico. For the reasons set forth below, I believe that WEST used the **Target Device** to communicate with co-conspirators during a drug smuggling event on December 29, 2019. On that date, WEST was arrested after driving a vehicle into the Port of Entry with approximately 16.36 kilograms of methamphetamine concealed within the vehicle's spare tire, charged in S.D. Cal. Crim. Case No. 19-MJ-5756. The **Target Device** is currently in the possession of HSI Office of the Deputy Special Agent in Charge (DSAC) San Ysidro, 2255 Niels Bohr Ct., San Diego, California 92101, located within the Southern District of California.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

1

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## TRAINING AND EXPERIENCE

5. I am a Special Agent with Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed as a Special Agent since October 2017. I attended and completed the Federal Law Enforcement Training Center Criminal Investigator Training Program, as well as the HSI Special Agent Training program. Prior to my employment with HSI, I was employed as a Department of Defense Police Officer from 2015-2016. I served in the United States Air Force (USAF) from 2007-2010 as Security Forces. I earned a Bachelor of Science Degree in Organizational Security and Management from the University of Phoenix in 2015.

6. I am currently assigned to Operation Alliance, a joint narcotic smuggling task force, at the Office of the Deputy Special Agent in Charge, San Ysidro, California. I have been assigned to Operation Alliance since May 2018. I specifically investigate narcotics smuggling activities at the Southern California land border Ports of Entry. I work with members of the Drug Enforcement Administration (DEA), and as such, maintain cross designation to enforce federal narcotics laws delineated in Title 21 of the United States Code. I have participated in and conducted investigations involving narcotics importation, distribution, and sales.

7. I have successfully completed the HSI Special Agent Training Program, the Criminal Investigator Training Program, and the Uniformed Police Officer Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. In addition, I

receive recurrent formal classroom training and continuous on-the-job training related to narcotic smuggling trends and narcotic smuggling organizations. As a Federal Agent, I have been the lead case agent for approximately thirty-five (35) narcotic related cases. I have assisted other agents with approximately ninety (90) narcotic related cases.

8.  Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing electronic devices to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use electronic devices, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from electronic devices. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9.  Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a.  Drug smugglers will use electronic devices because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b.  Drug smugglers will use electronic devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

3

    c.    Drug smugglers and their accomplices will use electronic devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d.    Drug smugglers will use electronic devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e.    Drug smugglers will use electronic devices to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f.    Drug smugglers and their co-conspirators often use electronic devices to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g.    The use of electronic devices by drug smugglers tends to generate evidence that is stored on the electronic devices, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular/mobile telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular/mobile telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that electronic devices often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent

4

files contained on or in the electronic device. Specifically, I have learned, based upon my training, education, and experience that searches of electronic devices associated with narcotics smuggling investigations yield evidence:

    a.    tending to identify attempts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the electronic device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12. On December 29, 2019, at approximately 10:35 a.m., Christopher West, ("WEST"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane #29. WEST was the driver and sole occupant of a 2005 GMC Sierra ("the vehicle") bearing California license plates 7W13617.

13. Canine Enforcement Officer (CEO) Steven Castillo was conducting pre-primary operations when his assigned Human and Narcotic Detection Dog alerted to the spare tire of the vehicle. CBPO S. Anzar received two negative Customs declarations

from WEST. WEST stated he was crossing the border to go to Chula Vista, California. CBPO A. Parilla was operating the Z-Portal X-Ray machine when the CBPO detected anomalies in the spare tire of the vehicle.

14. Further inspection of the vehicle by CBPO Ryan Maddela resulted in the discovery of 17 packages concealed in the spare tire of the vehicle, with a total approximate weight of 16.36 kgs (36.06 lbs). A sample of the substance contained within the packages was field tested by CBPO Maddela yielding a positive result for the characteristics of methamphetamine.

15. Homeland Security Investigations (HSI) Special Agents (SA) Robert Torrence Rainier Mendoza responded to the San Ysidro Port of Entry. SA Torrence reviewed the available paperwork, conducted database queries. SA Torrence and SA Mendoza inspected the items found on West's person and in the vehicle WEST was driving. SA Torrence seized the **Target Device** from WEST's personal belongings.

16. WEST Showed SA Torrence and SA Mendoza contacts within the **Target Device** which he identified as coconspirators. WEST stated he used an application on the **Target Device** to communicate with his recruiter. WEST stated the recruiter was to contact WEST a successful border crossing to issue further instructions.

17. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that the Defendant likely used the **Target Device** to coordinate the importation of federally controlled substances into the United States. In addition, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information may be stored in the memory of the **Target Device** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of the Defendant,

such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information, may be stored in the memory of the **Target Device**.

18. Finally, I also have learned that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional training, education and experience, I have learned that this requires planning and coordination in the days, weeks, and often months prior to the event. Given this, I request permission to search the **Target Device** for items listed in Attachment B beginning on September 21, 2019, up to and including December 21, 2019.

## SEARCH METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such

acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer

20. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

22. Based on all of the facts and circumstances described above, there is probable cause to conclude that WEST used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

23. Because the **Target Device** was promptly seized during the investigation of WEST's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by WEST continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from September 29, 2019, up to and including December 29, 2019.

24. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

ROBERT TORRENCE
HSI Special Agent

8

Case 3:20-mj-00697-JLB   Document 1   Filed 02/13/20   PageID.10   Page 10 of 12

Subscribed and sworn to before me
this 13 day of February, 2020.

HON. JILL L. BURKHARDT
United States Magistrate Judge

9

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The property to be searched (the **Target Device**) is described as:

        Apple Iphone
        IMEI: 35-726009-246190-3
        MEID: 35726009246190

The **Target Device** is currently stored at the HSI San Ysidro DSAC Office, San Ysidro, 2255 Niels Bohr Ct., San Diego, California 92101.

1

## ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data for the period of September 29, 2019, up to and including December 29, 2019.

a. tending to identify attempts to import methamphetamine, or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the electronic device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

1